# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GIBSON LEXBURY LLP, a Nevada limited-liability partnership, )
)
)
Plaintiff, )
)
vs. )
)
KIMBERLY MOFFATT JONES, *et al.*, )
)
Defendants. )
)

Case No.: 2:23-cv-00560-GMN-DJA

**ORDER**

Pending before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction, (ECF No. 11), filed by Defendants Kimberly Moffatt Jones, 150 Newport Center Drive, and NBOC, LLC (collectively, "Defendants'").  Plaintiff Gibson Lexbury LLP ("Plaintiff") filed a Response, (ECF No. 16), to which Defendants filed a Reply, (ECF No. 17).

Also pending before the Court is Defendants' Motion to Change Venue or Transfer, (ECF No. 12).  Plaintiff filed a Response, (ECF No. 16), to which Defendants filed a Reply, (ECF No. 17).

Also pending before the Court is Plaintiff's Motion to File a Surreply, (ECF No. 39). Defendants filed a Response, (ECF No. 49), to which Plaintiff filed a Reply, (ECF No. 53).

Also pending before the Court is Defendants' Motion to Stay Discovery, (ECF No. 20). Plaintiff filed a Response, (ECF No. 24), to which Defendants filed a Reply, (ECF No. 25).

Also pending before the Court are Plaintiff's Motion for Sanctions, (ECF Nos. 26, 27, 28, 29).  Defendants' filed Responses, (ECF Nos. 30, 31, 32, 33), to which Plaintiff filed Replies, (ECF Nos. 34, 35, 36, 37).

///

///

For the reasons discussed below, the Court **DENIES** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Change Venue or Transfer and **DENIES as moot** Defendants' Motion to Stay Discovery.[1]  The Court also **DENIES** Plaintiff's Motions for Sanctions and Motion to File a Surreply.[2]

## I.   BACKGROUND

This case arises from Defendants' alleged breach of contract.  Plaintiff is a law firm in Las Vegas, Nevada. (Compl. ¶ 11, Ex. 1-A to Pet. Removal, ECF No. 7).  Defendant Kimberly Moffatt Jones ("Defendant Jones") is a resident of California. (Defendant Jones Decl. ¶ 4, Ex. A to Mot. Dismiss ("MTD"), ECF No. 11-1).  Defendant Jones is the sole owner of Defendant 150 Newport Drive, LLC ("Defendant 150 NCD") and Defendant NBOC, LLC ("Defendant NBOC"). (MTD 2:5–7, ECF No. 11); (Compl. ¶ 15, Ex. 1-A to Pet. Removal).

In 2017, Plaintiff agreed to represent Defendant Jones in litigation against Defendant Jones' former divorce attorney, Stephen Kolodony (the "Kolodony Matter"). (Steven Gibson[3] ("Gibson") Declaration ¶ 4, Ex. 1 to Resp., ECF No. 16-2).  The terms of representation was set forth in a "Legal Services Arrangement." (*See generally* Legal Services Arrangement, Ex. 1-A to Resp., ECF No. 16-3).  The Legal Services Arrangement contained a venue provision, stating that,

> The Parties hereby submit to the exclusive jurisdiction of the federal and state courts located in the State of Nevada, County of Clark, and for any actions, suits or proceedings asserting a breach of this Agreement only.  The Parties hereby irrevocably and unconditionally waive any objection to the laying of venue in any action, suit or proceeding arising out of an alleged breach of this Agreement, in the courts of the State of Nevada or of the United States of America located in the State

---

[1] Defendants' Motion to Stay Discovery requests a stay be imposed pending a ruling on its Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Change Venue. (*See generally* Mot. Stay).  Because the Court renders ruling and denies these Motions for the reasons set forth below, it DENIES as moot the Motion to Stay Discovery.

[2] The Court finds that a surreply would be of no assistance to the resolution of the pending Motions, as the parties' current filings adequately address the pertinent issues.  Accordingly, Plaintiff's Motion is DENIED.

[3] Gibson is a managing partner at Gibson Lexbury LLP. (Gibson Decl. ¶ 1, Ex. 1-A to Resp.).

of Nevada, and hereby further irrevocably and unconditionally waive and agree not to plead or Claim in such court that any such action, suit, or proceeding brought in such court has been brought in an inconvenient forum. This Agreement shall be construed in accordance with the laws of the State of Nevada.

(*Id.* ¶ 16, Ex. 1-A to Resp.).

In addition to the Kolodony Matter, Plaintiff also represented Defendant Jones and Defendant 150 NCD in a lawsuit involving a real estate investment at 150 Newport Center Drive, LLC (the "150 NCD Matter"). (MTD 3:5–16); (Resp. 4:9–17, ECF No. 16).  On May 10, 2018, Plaintiff sent Defendant Jones an "Engagement Letter" to govern the terms of Plaintiff's representation of Defendant Jones and Defendant 150 NCD in that matter.  As with the Legal Services Arrangement, the Engagement Letter contained a venue provision, stating,

This agreement shall at all times be construed and interpreted in accordance with the laws of the State of Nevada, without regard to principle of conflicts of law.  The federal and states courts within the State of Nevada shall have the sole and exclusive jurisdiction over the resolution of disputes concerning this engagement and the Firm's performance thereof, provided that nothing herein shall prohibit either of us from pursuing resolution of any such dispute through appropriate channels within the State Bar of Nevada.  Any controversy, dispute or claim that arises between us concerning the Firm's compensation, performance of legal services or other aspects of our representation shall be decided within the State of Nevada.

(Engagement Letter at 5, Ex. 1-B to Resp., ECF No. 16-4).  Defendant Jones did not immediately sign the Engagement letter, leading to Plaintiff's controller, Ryan Jenkins ("Jenkins"), resending the Engagement Letter later that day, and again on June 4, 2018. (Jenkins & Defendant Jones May 10, 2018, Email Exchange at 2, Ex. 2-A to Resp., ECF No. 16-9); (Jenkins & Defendant Jones June 4, 2018, Email Exchange at 2, Ex. 2-B to Resp., ECF No. 16-10).  Several days later, Defendant Jones notified Gibson she would sign the Engagement Letter "[e]ither tonight or tomorrow[.]" (Gibson & Defendant Jones June 8, 2019, Email Exchange at 2, Ex. 2-C to Resp., ECF No. 16-11).  Despite this representation, Defendant Jones ultimately did not sign the Engagement Letter. (Resp. 5:15–16); (Reply 10:7–

9, ECF No. 16).  Although the Engagement Letter remained unsigned, Plaintiff continued representing Defendant Jones and Defendant 150 NCD. (Resp. 5:15–19).  On August 14, 2018, while Gibson was preparing to file a complaint in the 150 NCD Matter, Defendant Jones emailed Gibson directing him "to move forward" with the case "as quickly and aggressively as possible." (Gibson & Defendant Jones August 14, 2018, Email Exchange at 2, Ex. 2-E to Resp., ECF No. 16-13).

Around this time, Plaintiff also agreed to represent Defendant Jones and Defendant NBOC in a lawsuit alleging that Defendant Jones was fraudulently induced to appear on a reality television show (the "Authentic Matter"). (Compl. ¶¶ 23–34, Ex. 1-A to Pet. Removal). Plaintiff's representation of Defendant Jones and Defendant NBOC in the Authentic Matter was "under the same terms and conditions as for the [150] NCD Matter that were memorialized in the Engagement Letter." (Gibson Decl. ¶ 12, Ex. 1 to Resp.).

Over the next few years, Defendant Jones requested accommodations with respect to her payments under the Legal Services Arrangement and Engagement Letter. (Compl. ¶¶ 19–38, Ex. 1-A to Pet. Removal).  For example, on January 11, 2021, Gibson emailed Defendant Jones regarding her request for a fee payment accommodation to lower her monthly payments in all ongoing matters.  Gibson's email stated in part that "You have also agreed that as part of this accommodation, the firm will be granted a 10% contingency fee on the Authentic matter (in addition to the hourly-rated fees) consistent with the terms of our legal services agreement." (Gibson & Defendant Jones March 12, 2021, Email Exchange at 2, Ex. 2-D to Resp., ECF No. 16-12).  On March 12, 2021, Defendant Jones responded, "Yes, I agree to the $18,000 due each month. . . . The only other item I would like to clarify, is upon settling the Authentic case, the outstanding attorney's fees would be paid first and then then 10% contingency fee would then be calculated." (*Id.* at 2, Ex. 2-D to Resp.).

In February 2022, the annual rate owed by Defendant Jones under the Legal Services

Agreement and Engagement Letter increased, leading to a dispute between the parties.  On March 4, 2022, Michael Floryan ("Floryan"), Defendant Jones' personal transaction lawyer, contacted Gibson to request documentation to support the increased rate. (March 8, 2022, Email from Floryan at 6, Ex. 1-D to Resp., ECF No. 16-6).  Floryan stated Defendant Jones was in no way, "undermining the engagement, trying to renegotiate the terms of any agreements between her and [Plaintiff], or 'going back on' her word.'" (*Id.*, Ex. 1-D to Resp.); (*see id.*, Ex. 1-D to Resp.) (explaining that Defendant Jones "did not (nor intend to) question the working relationship").

Gibson and Floryan exchanged a series of emails discussing whether Defendant Jones, on behalf of herself and the other Defendants, believed the Engagement Letter was unenforceable. (*Id.* at 2–5, Ex. 1-D to Resp.).  Floryan explained that Defendant Jones "[was] not disputing any engagement letter[,]" but rather, "[was] raising concerns over the fact that [Plaintiff] has not provided her with rate increase notices in accordance with the terms of the [Engagement Letter]." (*Id.* at 2, Ex. 1-D to Resp.).  Gibson then responded that "I trust, therefore, that [Defendant Jones] agrees that she is bound by the unsigned engagement letter. . . . . I am therefore relying on your representation and hers that I do not need to receive her signature on same as she has agreed to be bound by such letter agreement." (March 9, 2022, at 2, Email from Floryan, Ex. 1-E to Resp., ECF No. 16-7).  This exchange culminated in Floryan stating that "There has *never* been a dispute by [Defendant] Jones about any engagements or the applicability therefore." (*Id.*, Ex. 1-E to Resp.) (emphasis in original).

The parties relationship soon deteriorated.  Plaintiff alleges that beginning in December 2022, Defendants stopped making payments owed under the applicable agreements. (Resp. 8:11–19).  Plaintiff subsequently initiated the present lawsuit in state court, asserting the following claims: (1) anticipatory repudiation; (2) breach of contract – December 2022 payments; (3) breach of contract – LSA total amount owed payments; (4) breach of the implied

covenant of good faith and fair dealing; (5) fraudulent inducement – first cash flow misrepresentation; (6) fraudulent inducement – second cash flow misrepresentation; (7) fraudulent inducement – third cash flow misrepresentation; (8) fraudulent inducement – fourth cash flow misrepresentation; and (9) unjust enrichment. (*Id.* ¶¶ 58–134). Defendants then removed the case to this Court based on diversity jurisdiction. (*See generally* Pet. Removal, ECF No. 1). Defendants subsequently filed their Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Change Venue or Transfer, (ECF Nos. 11, 12), and Plaintiff its Motions for Sanctions, (ECF No. 26, 27, 28, 29), which the Court discusses below.

## II.    LEGAL STANDARD

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). "Nevada's long-arm statute permits the exercise of jurisdiction on any basis consistent with federal due process." *Elko Broadband Ltd. v. Haidermota BNR*, No. 3:20-cv-00293, at *2 (D. Nev. Mar. 11, 2021) (citing NRS § 14.065(1). The Due Process Clause limits a state's power to exercise control over a nonresident defendant. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). To protect a defendant's liberty, due process necessities that a nonresident defendant have "certain minimum contacts" with a forum state before that state can exercise personal jurisdiction over that individual or entity. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two types of jurisdiction—general and specific. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). General jurisdiction depends on the defendant's "substantial, continuous and systematic" contracts with the forum, "even if the suit concerns matters not arising out his contacts with the forum." *Id*. Specific jurisdiction exists "where the cause of action arises out of or has substantial connection to the defendant's contact with the forum. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain*, Co., 284 F.3d 1114, 1123 (9th Cir.

2002).  If a defendant has sufficient minimum contacts for the court to have personal jurisdiction over the defendant, the exercise of such jurisdiction must also be reasonable. *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987).

Fed. R. Civ. P. 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction.  "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).  "A plaintiff must establish jurisdiction over each defendant individually." *Zuercher v. Hoskins*, No. 4:21-cv-05142, 2021 WL 6551433, at *2 (N.D. Cal. Dec. 16, 2021).  The court "may order discovery on the jurisdictional issues." *Unocal*, 248 F.3d at 922 (citing *Data Disc. Inc. v. Sys. Tech. Ass'n, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  "When a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand" the motion. *Id.* (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)); *see also Data Disc*, 557 F.2d at 1285 ("[I]t is necessary only for [the plaintiff] to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.").

"Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing *Unocal*, 248 F.3d at 922); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  However, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (citations and internal quotation marks omitted).

III.   **DISCUSSION**

A.  **Motions to Dismiss for Lack of Personal Jurisdiction & Transfer, (ECF Nos. 11, 12)**

Defendants argue they have insufficient contacts with the forum for the Court to exercise either general or specific personal jurisdiction over them. (MTD 6:16–12:8). Defendants further contend that if the Court concludes dismissal is inappropriate, it should transfer the case "because the events giving rise to this action, all witnesses, and related evidence are in California." (Mot. Transfer 13:15–17, ECF No. 12). In response, Plaintiff contends the forum selection clauses contained in the Legal Services Agreement and Engagement Letter, which Plaintiff contends were assented to in all matters it represented Defendants in, are valid and dispositive with respect to the Court's exercise of personal jurisdiction over Defendants and venue in this District. (Resp. 10:10–17:17).

Both personal jurisdiction and venue are waivable rights. *See Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Reebok Int'l Ltd. v. TRB Acquisitions LLC*, No. 3:16-cv-1618, 2017 WL 3016034, at *1 (D. Or. July 14, 2017) ("A defense of improper venue is waivable.") (citing *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014)). Therefore, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). "The [C]ourt need not embark on a minimum contacts analysis where the defendants consent to the court's exercise of personal jurisdiction in the forum." *Radiant Global Logistics, Inc. v. Drummond*, No. 18-cv-1063, 2018 WL 5276581, at *4 (W.D. Wash. Oct. 24, 2018) (citing cases); *see Allred v. Innova Emergen Med. Assocs., P.C.*, No. 18-cv-03633, 2018 WL 4772339, at *1 n.1 (N.D. Cal. Oct. 1, 2018) (noting that because the forum selection clause issue was dispositive, the court did not need to address the defendants' arguments regarding personal jurisdiction).

The Ninth Circuit recognizes that accepting a forum selection clause evidences consent to both venue and personal jurisdiction in that forum. *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007); *see also United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 929 n.14 (9th Cir. 2009) (finding that a contract's forum selection clause is "consent to personal jurisdiction and venue"). Accordingly, the Court's analysis of personal jurisdiction and venue begins by examining the enforceability of the forum selection clauses at issue.

At bottom, the sole question before the Court is whether Defendant Jones, individually and on behalf of Defendants, assented to the terms of the Engagement Letter, including its forum selection clause. Defendants argue the terms of the Engagement Letter are not binding on the parties because there was no mutual assent, as evidenced by Defendant Jones decision not to sign the Engagement Letter and later questioning the amount of fees she owed in all ongoing matters. (Reply 3:6–5:17). In response, Plaintiff argues that despite Defendant Jones not signing the Engagement Letter, her subsequent conduct demonstrated she assented to and ratified the terms of the Engagement Letter. (Resp. 10:11–17:17).

An enforceable contract requires: (1) offer and acceptance, (2) meeting of the minds, and (3) consideration. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Here, the parties only dispute the second element, specifically whether there was a meeting of the minds to the Engagement Agreement's essential terms. (Reply 3:6–5:17); (Resp. 10:11–17:17). A meeting of the minds exist when the parties have agreed upon the contract's essential terms. *Certified Fire Prot. Inc. v. Precision Constr. Inc.*, 283 P.3d 250, 255 (2012); *see also Roth v. Scott*, 921 P.2d 1262, 1265 (Nev. 1996). Under Nevada law, "[m]utual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties." *Alter v. Resort Props. of Am.*, 130 Nev. 1148 (2014) (citation omitted). "If the outward words and acts of the parties can reasonably be interpreted as acceptance, then mutual assent exists." *Id.*

///

At the outset, the Court disagrees with Defendants' position that the Engagement Agreement is unenforceable merely because it remains unsigned. *See Fresquez v. Nationstar Mortg., LLC*, No. 2:16-cv-1274, 2017 WL 2880402, at *3 (D. Nev. July 5, 2017) ("Plaintiff's argument that there was no agreement because no written agreement was signed is contrary to contract law."); *Lincoln General Ins. Co. v. Tri Cnts. Bank*, No. 10-cv-1442, 2010 WL 3069874, at *4 (E.D. Cal. Aug. 5, 2010) ("Likewise it is not fatal to plaintiff's breach of contract claim that Sanderson did not sign the contract. . . . to the extent Sanderson's consent was required (which plaintiff disputes), plaintiff has alleged Sanderson's assent to the contract[.]").  And here, despite the lack of written signature, Defendant Jones' conduct manifested an understanding of the terms of the Engagement Letter and demonstrated that a binding agreement was made. *See VACC, Inc. v. Davis*, 823 Fed. App'x 474, 477 (9th Cir. 2020) ("Nothing in Bayat's outward manifestations suggests an understanding that the oral agreement would be contingent on the reduction of the agreement to writing.").

First, Defendant Jones readily accepted Plaintiff's legal representation in several lawsuits without protestation.  Indeed, in the 150 NCD Matter, Defendant Jones emailed Gibson to "keep the retainer 'as is'" and directed Gibson "to move forward" with the litigation "as quickly and aggressively as possible." (Gibson & Defendant Jones August 14, 2018, Email Exchange at 2, Ex. 2-E to Resp.).  Defendant Jones' willingness to utilize Plaintiff's services in multiple lawsuits despite purportedly not understanding the material terms of their relationship is curious, and more than a little suspect. *See VACC, Inc.*, 823 Fed. App'x at 477 ("[N]o allegation supports VACC's contention that the settlement conference was an unenforceable 'agreement to agree.'").

Next, the emails between Gibson and Defendant Jones regarding a payment accommodation that was reached in all "matters that are ongoing" further demonstrates Defendant Jones' assent. (Gibson & Defendant Jones March 12, 2021, Email Exchange at 2,

Ex. 2-D to Resp.).  Specifically, these emails demonstrate Defendant Jones did not contest the existence of the contractual relationship with Plaintiff, but instead sought a modification in the execution of said agreements.  And the evidence set forth by Plaintiff shows the parties reached an accommodation, as Defendant Jones continued making payments pursuant to the agreements until December 2022. *See Pravorne v. McLeod*, 383 P.2d 855, 858 (1963) (explaining that whether an acceptance was effective does not necessarily depend on whether the offer was signed by the offeree; rather, the relevant inquiry is whether the offeree consented to be bound).

Finally, Defendants' contention that Defendant Jones neither entered into the Engagement Agreement nor understood its material terms is belied by Floryan's repeated attestations that Defendant Jones did not dispute the enforceability of the Engagement Agreement.  Specifically, Floryan expressly stated Defendant Jones was in no way, "undermining the engagement, trying to renegotiate the terms of any agreements between her and [Plaintiff], or 'going back on' her word.'" (*Id.*, Ex. 1-D to Resp.); (*see id.*, Ex. 1-D to Resp.) (explaining that Defendant Jones "did not (nor intend to) question the working relationship").  Floryan then elaborated Defendant Jones "[was] not disputing any engagement letter[,]" but rather, "is raising concerns over the fact that [Plaintiff] has not provided her with rate increase notices in accordance with the terms of the [Engagement Letter]." (*Id.* at 2, Ex. 1-D to Resp.).  Lastly, Floryan expressed "There has *never* been a dispute by [Defendant] Jones about any engagements or the applicability therefore." (*Id.*, Ex. 1-E to Resp.) (emphasis in original).  To adopt Defendants' position would be manifestly unfair where, as here, Defendant Jones, through Floryan, repeatedly attested to the existence and enforceability of the parties' agreements.

In sum, the Court finds the forum-selection clauses found in the Legal Services Agreement and Engagement Agreement are dispositive on the issue of personal jurisdiction and venue as to Defendants.  "The court need not embark on a minimum contacts analysis where

the defendants consent to the court's exercise of personal jurisdiction in the forum." *Radiant*

*Global Logistics, Inc.*, 2018 WL 5276581, at *4 (citing cases).  Accordingly, Defendants'

Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer are DENIED.

### B.  Motions for Sanctions, (ECF No. 26, 27, 28, 29)

Plaintiff argues sanctions are warranted because Defendants "omitted evidence or

discussion of Defendants' affirmation of being bound by the Nevada forum selection clauses"

found in the agreements. (Mot. Sanctions 14:25–27, ECF No. 26); (Mot. Sanctions 15:4–

23:10).

Rule 11 requires the imposition of sanctions when a motion is frivolous, legally

unreasonable, or without factual foundation, or is brought for an improper purpose." *Conn v.*

*Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992) (citing *Operating Eng'rs Pension Trust v. A-C*

*Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).  In determining whether a claim is frivolous or

brought for an improper purpose, the standard is one of objective reasonableness. *Id.* at 1421.

"If, judged by an objective standard, a reasonable basis for the position exists in both law and

fact at the time the position is adopted, then sanctions should not be imposed.'" *Id.* (quoting

*Golden Eagle Dist. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986).  The

central purpose of the rule is to deter baseless filings in district court and streamline the

administration and procedure of the federal courts. *See Cooter & Gell v. Hartmarx Corp.*, 496

U.S. 384, 393 (1990).  The Ninth Circuit has held: "Rule 11 is an extraordinary remedy, one to

be exercised with extreme caution." *Operating Eng'rs*, 859 F.2d at 1345.

Here, Defendants' arguments are neither creative nor novel.  Instead, the underlying

legal and factual assertions lack a reasonable underpinning and could be considered

sanctionable conduct.  Nevertheless, the Court declines to award sanctions at this time.  The

Court cautions Defendants that should they advance similar arguments in the future, the Court

will not hesitate to impose sanctions.  The Court urges Defendants to avoid arguments that

would result in those consequences.  Accordingly, Plaintiff's Motions for Sanctions are DENIED.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, (ECF No. 11), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Transfer, (ECF No. 12), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions, (ECF Nos. 26, 27, 28, 29), are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to File a Surreply, (ECF No. 39), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Discovery, (ECF No. 20), is **DENIED as moot**.

**DATED** this   23   day of September, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT